**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:17-CR-233** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAVID SERRANO-MUNOZ** | : | |

## MEMORANDUM AND ORDER

## I.   Introduction

David Serrano-Munoz is a previously convicted sex offender and pretrial detainee who awaits trial on charges of use of a minor to produce child pornography in violation of 18 U.S.C. § 2251, receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5). These charges involving the sexual exploitation of a minor allegedly took place while the defendant resided with his mother, the individual who he currently proffers as a third-party custodian. Thus, Serrano-Munoz's motion would invite us to return him to the precise setting where he committed the grave offenses set forth in this indictment.

Serrano-Munoz is currently incarcerated in the Philadelphia County Prison system, but was, up until recently, housed at the Adams County Prison, as he awaited trial on charges of sexual exploitation of minors, including charges of possession and distribution of child pornography and inducing a minor to engage in sexually

explicit conduct for the purpose of producing child pornography. His criminal history is breath taking in its depth, scope, and potential for flight and harm to others. Thus, Serrano-Munoz has a criminal record which spans over two decades and has been marked by conduct such as theft, sex offenses, evading law enforcement, using aliases, and failing to appear at scheduled court proceedings.

Notwithstanding this constellation of factors all of which caution against Serrano-Munoz's release pending trial, this case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties and is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century

of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED without prejudice to renewal on a more fulsome factual record.

## II.   **Factual Background and Procedural History**

On August 2, 2017, the defendant was charged in a sealed indictment with use of a minor to produce child pornography in violation of 18 U.S.C. § 2251, receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5). Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a detention hearing were then conducted in this case on August 9, 2017.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: The defendant was thirty-eight years old at the time of

his arrest and resided in Philadelphia, Pennsylvania with his mother, the third-party custodian who is currently being proffered to the court. He reported that he was self-employed at the time. He also reported that he suffered from Type 2 diabetes, but stated that he had not been taking his medication at the time he was arrested because "police were looking for me."

Serrano-Munoz was a registered sex offender at the time of his arrest in 2017. His criminal history spanned almost two decades and included convictions for involuntary deviate sexual intercourse, unlawful restraint, simple assault, as well as convictions for theft and receiving stolen property. The pre-trial services report recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: the nature of the charged offenses and prior criminal convictions; the pending local criminal matters the defendant was facing; his history of escape and failure to appear, as well as his use of aliases in the past; and his history of violence and charges involving sex offenses and children.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we found that the defendant had not overcome the

presumption of detention that attached based on the fact that his charges involved a minor victim. (Doc. 13). In addition, given the defendant's bizarre, disruptive and confused conduct at these initial proceedings, which included a profane outburst directed at his counsel, we recommended that the government move for a psychological evaluation to determine the competency of the defendant, and the district court ordered such an evaluation to be completed. (Docs. 15, 19).

In November 2017, the district court denied the defendant's motion to reconsider our initial detention order, given the fact that the defendant's proposed third-party custodian was absent from the hearing. (Doc. 29). Subsequently, a superseding indictment was filed on November 22, 2017, charging the defendant with additional counts of sexual exploitation of minors, and the defendant was arraigned on these additional charges on December 27, 2017.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. In addition, the defendant urges us to consider his personal health problems, including Type 2 diabetes and

high blood pressure, which he contends place him at a higher risk of contracting this virus.

The Government, in turn, opposes this motion, arguing that the defendant has not met his burden to justify his release pending trial. For the reasons that follow, we agree, and the defendant's motion will be denied.

## III.   Discussion

### A. Temporary Release Under 18 U.S.C. § 3142

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).

> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics

6

(including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members

of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

**B.** **The Defendant's Motion for Temporary Release Will Be Denied.**

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-

19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, in addition to the defendant's genuine, but generalized, concern regarding the risks created by COVID-19, the defendant also notes that he has Type-2 diabetes and high blood pressure for which he takes medication. However, several courts have held that having these conditions is not enough to justify a defendant's pretrial release. See e.g., United States v. Porter, 2020 WL 1984318, at *5 (W.D. Pa. April 27, 2020) (finding that "concern about potentially contracting the virus is currently too uncertain to rise to an exceptional reason for release, even for inmates with underlying health conditions, including [ ] high blood pressure"); United States v. Minor, 2020 WL 1987117, at *1 (W.D.N.C. April 27, 2020) (denying motion for release where defendant had diabetes and high blood pressure); United States v. Calhoun, 2020 WL 1975186, at *3 (E.D. Mich. April 24, 2020) (same); United States v. Hernandez, 2020 WL 1974234, at *2 (S.D.N.Y. April 24, 2020) (same); United States v. Stevens, 2020 WL 1888968, at *4 (E.D. Pa. April 16, 2020) (same).

Moreover, the defendant does not provide us with any evidence to suggest that his proposed release plan to a third-party custodian would mitigate his risk to exposure of COVID-19 or the risk to others. Serrano-Munoz's motion proposes his release to a third-party custodian, his mother.[1] However, the motion does not

---

[1] We are also constrained to observe that Serrano-Munoz's proffered third-party

address how this proposed living arrangement would mitigate his exposure or his mother's. Rather, the motion asserts generally that the prisons do not allow for proper compliance with procedures that tend to limit the spread or exposure of the virus. On this score, the government asserts that the Philadelphia Department of Prisons like all prisons has taken additional steps during this time to insulate and protect inmates from COVID-19.

However, we must weigh these health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: the nature of the charged offenses and prior criminal convictions; the pending local criminal matters the defendant was facing; his history of escape and failure to appear, as well as his use of aliases in the past; and his history of violence and charges

--------

custodian, his mother, is particularly problematic. Serrano-Munoz resided with his mother when he committed the offenses charged in his indictment. Therefore, we would be returning the defendant to the very setting where it is alleged that these crimes took place. On this score, we also note that the defendant proffered his mother as his third-party custodian during his November 20, 2017 hearing, and his mother failed to appear at the hearing. Moreover, the Government has proffered that the defendant's mother accompanied him on a trip to York, where he had arranged to pick up the minor victim and take her to his mother's home in Philadelphia, although the defendant told his mother the victim was an adult. Thus, it appears that the defendant has been less than truthful with his mother about his alleged criminal conduct, which does not inspire faith that this individual would be a suitable third-party custodian.

14

involving sex offenses and children. In addition, the defendant has a history of nonappearance and attempting to evade or escape from law enforcement. The defendant's motion does not address these very serious and grave considerations that ultimately led to the defendant's detention in the first instance, nor does it consider the risk to the community should the motion for release be granted.

Having made these findings, we conclude as a factual matter that the defendant has failed to provide us with sufficient medical information that would justify his release or consideration of his proffered third-party custodian. Further, while we do not question the good faith of the defendant's proposed third-party custodian, his mother, several immutable facts demonstrate that Serrano-Munoz's mother would not be an appropriate third-party custodian given the defendant's history of relentless recidivism. Serrano-Munoz resided with his mother when he committed the offenses charged in his indictment. He, thus, invites us to return him to the very setting where it is alleged that these crimes took place. Moreover, the fact that the defendant's mother failed to appear when Serrano-Munoz proffered her as his third-party custodian during his November 20, 2017 bail hearing suggests that she may be unable to perform the duties of a third-party custodian on a sustained basis. Further, it appears that Serrano-Munoz used his mother as an unwitting dupe to facilitate his crimes since the Government has proffered that the defendant's mother accompanied him on a trip to York, where he had arranged to pick up the

minor victim and take her to his mother's home in Philadelphia, although the defendant told his mother the victim was an adult. Finally, we note that in a case such as this, where the evidence is clear, "the Court is able to resolve [a § 3142(i)] motion without a hearing or oral argument." United States v. Veras, No. 3:19-CR-010, 2020 WL 1675975, at *2 n.1 (M.D. Pa. Apr. 6, 2020). Given this uncontested evidence, we conclude that a hearing is neither necessary nor appropriate. Accordingly, we will deny this motion without prejudice to the defendant making a later showing that his medical conditions justify his release and consideration of his third-party custodian.

## IV.   **Conclusion**

Weighing and balancing these countervailing considerations we conclude that the safety concerns that led us to order the detention of the defendant pending trial have not been overcome by the defendant's generalized concerns regarding the spread of or exposure to the COVID-19 virus while incarcerated. Based upon these findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30,

2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge


DATED: April 29, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:17-CR-233** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAVID SERRANO-MUNOZ** | : | |

## ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 29th day of April 2020.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

18