## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:17-CR-233** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **DAVID SERRANO-MUNOZ,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Defendant David Serrano-Munoz moves the court to withdraw his guilty plea pursuant Federal Rule of Criminal Procedure 11(d)(2).  Serrano-Munoz alleges he misunderstood the range of penalties he might face by pleading guilty.  We will deny the motion.

### I.    <u>Factual Background & Procedural History</u>

On November 11, 2017, a federal grand jury returned an indictment against Serrano-Munoz charging him with three child pornography crimes: (1) sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) (Count One); (2) receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count Two); and (3) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Count Three).  (<u>See</u> Doc. 1).  The grand jury subsequently returned a superseding indictment adding a charge for failure to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count Four).  (<u>See</u> Doc. 32).

Serrano-Munoz's case was initially assigned to former Judge John E. Jones III.  Between 2017 and 2021, the parties litigated pretrial motions and engaged in

extensive plea negotiations.  Judge Jones also stayed the case for a period to await a

decision by the Third Circuit Court of Appeals that might have offered Serrano-

Munoz a defense to Count One.  On May 13, 2021, the government filed an executed

plea agreement indicating Serrano-Munoz's intention to plead guilty to Count One

of the superseding indictment.  (See Doc. 136).  Crucial to the present controversy,

the plea agreement acknowledges that Serrano-Munoz may be subject to a certain

sentencing enhancement codified in 18 U.S.C. § 2251(e).  (See id. ¶ 1).  Specifically,

the plea agreement states:

> The defendant acknowledges the potential applicability of
> an enhanced penalty under Title 18, United States Code,
> § 2251(e).  If the enhanced penalty applies, the maximum
> penalty for the offense is imprisonment for a period of 50
> years.  If the enhanced penalty does not apply, the
> maximum penalty for the offense is imprisonment for a
> period of 30 years.
>
> . . .
>
> Count 1 carries a mandatory minimum period of
> imprisonment of 25 years if the enhanced penalty under
> 18 U.S.C. § 2251(e) applies and 15 years if the enhanced
> penalty does not apply.

(See id. ¶¶ 1-2).  The agreement also preserves Serrano-Munoz's right to directly

and collaterally appeal the court's decision as to whether the enhancement applies.

(See id. ¶¶ 36-37).

Judge Jones referred Serrano-Munoz's case to Magistrate Judge Susan E.

Schwab for a change of plea hearing.  Judge Schwab conducted a change of plea

hearing via video conference on June 3, 2021, with Serrano-Munoz, his attorney,

Craig Kauzlarich, Esquire, and Assistant United State Attorney Carlo Marchioli,

Esquire, all present.  (See Doc. 167 at 1:15-20, 2:6-8).  Judge Schwab conducted an

extensive colloquy to assess the knowingness and voluntariness of Serrano-Munoz's

plea.  (See id. at 4:3-25:9).  Judge Schwab found Serrano-Munoz to be competent

and aware of the nature and purpose of the hearing.  (See id. at 24:16-22).  Serrano-

Munoz expressed both an understanding of his constitutional right to a jury trial

and a clear desire to waive that right.  (See id. at 5:17-7:2).  He also affirmed that his

plea was not actuated or informed by threat, force, or other undue influence, and

that he was pleading guilty of his own free will.  (See id. at 13:19-24).

    Two points of confusion arose during the hearing: one regarding the

sentencing enhancement and another concerning the facts the government would

have proven had Serrano-Munoz's case gone to trial.  The court and counsel fully

explored both points.  First, during the portion of the colloquy devoted to laying out

the terms of the plea agreement, Attorney Marchioli explained the penalties

Serrano-Munoz faced as follows:

> MR. MARCHIOLI:  Thank you, Your Honor.  Under
> paragraph 1 of the agreement, Mr. Serrano-Munoz agrees
> to plead guilty to Count 1 of the superseding indictment,
> which charges him with a violation of 18 U.S.C. Sections
> 2251(a) and 2251(e), the sexual exploitation of children.
>
> In paragraph 1, Mr. Serrano-Munoz acknowledges the
> potential applicability of an enhanced penalty under 18
> U.S.C. Section 2251(e).  That paragraph further provides
> that if the enhanced penalty applies, the maximum
> penalty for the offense is imprisonment for 50 years; if the
> enhanced penalty does not apply, the maximum penalty is
> imprisonment for a period of 30 years.
>
> . . .

> Paragraph 2 notes that Count 1 carries a mandatory
> minimum period of imprisonment of 25 years if the
> enhanced penalty under Section 2251(e) applies and a 15
> year mandatory minimum period of imprisonment if the
> enhanced penalty does not apply.

(Id. at 8:8-9:6).  Attorney Marchioli then continued to explain the other significant

paragraphs in the plea agreement.  (See id. at 9:7-10:15).  At the conclusion of

Attorney Marchioli's explanation, Judge Schwab asked if Attorney Kauzlarich

agreed with the description of the plea agreement's terms.  (See id. at 10:16-18).

Kauzlarich replied that he did.  (See id. at 10:19, 10:22).  Judge Schwab next turned

to Serrano-Munoz and proceeded to have the following exchange:

> THE COURT:  . . . And Mr. Serrano-Munoz, do you agree
> as well that Mr. Marchioli accurately summarized the
> agreement you have with the United States?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Is there any hesitation in that?
>
> THE DEFENDANT:  Yeah, I didn't understand the first
> count (inaudible)
>
> THE COURT:  You're going to have to repeat that, sir.  I
> can't understand what you said.
>
> THE DEFENDANT:  I didn't understand the first reading
> regarding the (inaudible)
>
> THE COURT:  Did I hear you correctly that you didn't
> understand what he read about the count that you're
> pleading to?
>
> THE DEFENDANT:  Correct.
>
> THE COURT:  You're pleading to one count is my
> understanding, Count 1 of the superseding indictment.
> Do you understand that, sir?

THE DEFENDANT:  Yeah (inaudible)

THE COURT:  Can you pull down your mask when you're speaking?  That would be helpful.  (Complied)  Thank you.  Did you not understand what he meant about the enhanced penalties?  Is that the part you didn't understand?

THE DEFENDANT:  Yeah.  I mean, I thought the mandatory minimum was 15 years.  And the way he read it was the mandatory minimum was 30 years.

THE COURT:  All right.  Let's have Mr. Marchioli go over this section again.  And I'm going to have you pay close attention, and then we're going to see if he cleared it up for you.  Okay?  Sometimes, you know, he just goes fast and you don't catch everything that is being said.  Okay?

THE DEFENDANT:  Okay, yep.

THE COURT:  Is that the only issue you had with his summary of the plea agreement?

THE DEFENDANT:  Yes.

(See id. at 10:25-12:1).  Judge Schwab then instructed Attorney Marchioli to repeat the terms of the plea agreement related to Serrano-Munoz's sentencing exposure.

(See id. at 12:11-12).  Attorney Marchioli reiterated:

MR. MARCHIOLI:  Yes, Your Honor.  As you mentioned, Mr. Serrano-Munoz has agreed to plead guilty to Count 1 of the superseding indictment, which charges sexual exploitation of children.  The statutory sentencing range for that offense could be impacted by a potential enhanced penalty under Section 2251(e) based on Mr. Serrano-Munoz prior conviction; in particular, his prior conviction for involuntary deviate sexual assault.

If that enhanced penalty applies, the imprisonment range will be 25 years to 50 years.  If the enhanced penalty does not apply, the imprisonment range would be 15 years to 30 years.  Under this plea agreement, the parties are

5

> retaining the right to litigate whether that enhanced
> penalty applies.
>
> THE COURT:  Thank you.  Mr. Serrano-Munoz, do you
> understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Any questions you want to ask about that?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Mr. Kauzlarich, do you -- can you confirm
> for the Court that your client understands the issue of
> enhanced penalty and which penalties may apply in this
> situation?
>
> MR. KAUZLARICH:  Yes, Your Honor.  We discussed
> that question extensively regarding the enhancements or
> the increase to the mandatory minimum that may apply
> and that will ultimately be an issue for Judge Jones to
> decide.
>
> THE COURT:  All right.

(See id. at 12:13-13:14).  With Serrano-Munoz clear as to the possible ranges of

imprisonment facing him, Judge Schwab proceeded with the remainder of the

colloquy.

   The second dispute arose after Judge Schwab instructed Attorney Marchioli

to describe the facts the government would have proven had Serrano-Munoz's case

gone to trial.  The relevant portion of the hearing transcript reads as follows:

> MR. MARCHIOLI:  Thank you, Your Honor.  Had this
> case proceeded to trial, the Government would have
> proven the following facts:  In January 2017, Mr. Serrano-
> Munoz initiated an unsolicited conversation through
> Instagram with a 16-year-old female who I'll refer to as
> the victim.  At that time, the victim was living in York
> County, Pennsylvania.

On February 4, 2017, the victim, who again was in York County, sent Mr. Serrano-Munoz through Facebook messenger at least seven images that constitute images of sexually explicit conduct and child pornography as those terms are defined in 18 U.S.C. Section 2256.

After receiving the first two images from the victim, Mr. Serrano-Munoz replied through Facebook messenger and directed the victim to take additional pictures with reference to the victim's genitals.  In response, the victim sent the five additional images in compliance with Mr. Serrano-Munoz's specific instructions.  Mr. Serrano-Munoz later requested images where he could see the victim's face and told her not to look away from the camera.

. . .

Additional Facebook and Instagram records show that between January 1st, 2017, and April 5th, 2017, the victim electronically sent at least 21 sexually explicit images to Mr. Serrano-Munoz and that at least 10 of them depicted sexually explicit conduct and child pornography as those terms are defined in 18 U.S.C. Section 2256.  Those are the facts that the Government would have proven at trial, Your Honor.

THE COURT:  Thank you, Mr. Marchioli.  Mr. Kauzlarich, do you agree that is what happened here?

MR. KAUZLARICH: I agree that is an accurate recitation, yes.

THE COURT:  And Mr. Serrano-Munoz, do you also agree that Mr. Marchioli accurately recited the facts in this case?

THE DEFENDANT:  No.

THE COURT:  Okay.  Which facts do you not agree with?

THE DEFENDANT:  The additional 21 photographs (inaudible)

THE COURT: We didn't understand you. Do you want to
--

THE DEFENDANT: I don't understand about the part about the additional photos.

THE COURT: You don't understand about the additional 21 images? Is what you don't understand?

THE DEFENDANT: Correct.

THE COURT: What about that don't you understand?

THE DEFENDANT: That was never -- I never knew about that.

MR. MARCHIOLI: Your Honor, may I clarify?

THE COURT: Yes, please.

MR. MARCHIOLI: The Government believes that the evidence shows that the victim sent Mr. Serrano-Munoz a total of 21 images that could fairly be categorized as sexually explicit during the period that we're talking about. Again, that's January to April 5th of 2017. Ten of those images are considered to depict sexually explicit conduct and child pornography as defined in Section 2256.

All that being said, the most important thing for purposes of the plea to Count 1 is that Mr. Serrano-Munoz is acknowledging that the victim sent him a total of seven images on February 4th, 2017, at least some of which were sent specifically in response to directions that Mr. Serrano-Munoz provided to the victim on that date about what images she should send.

THE COURT: Mr. Serrano-Munoz, do you agree with that?

THE DEFENDANT: Yeah, I agree with the seven, but I didn't agree with the rest what he said.

THE COURT: Mr. Kauzlarich, do you want to have a minute to talk to your client?

8

MR. KAUZLARICH:  Yes, please.

(Id. at 18:14-21:4).  The hearing then went into recess.  (See id. at 22:15-18, 23:24-24:5).  When the recess ended, Attorney Kauzlarich reported that Serrano-Munoz and Attorney Marchioli had reached an agreement as to the number of images involved in Serrano-Munoz's offense.  (See id. at 22:15-23:4, 23:24-24:5).  Attorney Marchioli placed the newly agreed-upon facts on the record:

> MR. MARCHIOLI:  On February 4th, 2017, the 16-year-old female victim, who again was living in York County, Pennsylvania, sent Mr. Serrano-Munoz through Facebook messenger multiple images that constitute images of sexually explicit conduct and child pornography as those terms are defined in 18 U.S.C. Section 2256.
>
> After receiving two images, Mr. Serrano-Munoz replied through Facebook messenger and directed the victim to take additional pictures with respect to the [victim]'s genitals.  In response, the victim sent additional images in compliance with Mr. Serrano-Munoz's specific instructions.  Again, those images constitute images of sexually explicit conduct and child pornography as those terms are defined in Section 2256.
>
> Those are the facts that the Government would have proven at trial.
>
> THE COURT:  Mr. Kauzlarich, do you agree with those facts?  Is that what happened here?
>
> MR. KAUZLARICH:  Yes, Your Honor.
>
> THE COURT:  And Mr. Serrano-Munoz, do you also agree that this is what happened here, what Mr. Marchioli recited?
>
> THE DEFENDANT:  Yes.

(<u>Id.</u> at 22:23-23:23).  Judge Schwab concluded the hearing by finding Serrano-Munoz's guilty plea to be knowing, voluntary, supported by independent facts, and uninfluenced by threats or promises outside of the written plea agreement.  (<u>See</u> <u>id.</u> at 24:23-25:5).  Accordingly, Judge Schwab recommended that Judge Jones accept Serrano-Munoz's guilty plea.  (<u>See</u> <u>id.</u> at 25:5-9).

Judge Jones adopted Judge Schwab's recommendation on June 8, 2021.  Serrano-Munoz's case was reassigned to the undersigned on July 26, 2021, in light of Judge Jones' retirement.  Before sentencing, we resolved several objections raised by Serrano-Munoz to the presentence investigation report, including, *inter alia*, his objection to application of the enhancement codified in 18 U.S.C. § 2251(e).  (<u>See</u> Docs. 161, 162).  We determined the enhancement applies to Serrano-Munoz, and he is subject to a 25-year mandatory minimum term of imprisonment.  (<u>See</u> Doc. 161 at 9-10).  The day of the sentencing hearing, Serrano-Munoz expressed a desire to withdraw his guilty plea.  We cancelled the hearing and directed Serrano-Munoz to file a formal motion to withdraw his guilty plea, which Serrano-Munoz did on February 17, 2022.  The motion is ripe and ready for disposition.

## II.   <u>Legal Standard</u>

Rule 11 of the Federal Rules of Criminal Procedure governs the entry, acceptance, and withdrawal of plea agreements and guilty pleas by criminal defendants.  <u>See</u> FED. R. CRIM. P. 11.  A defendant who pleads guilty has no absolute right to withdraw his plea after it has been entered.  <u>See</u> <u>United States v. James</u>, 928 F.3d 247, 253 (3d Cir. 2019) (citing <u>United States v. Brown</u>, 250 F.3d 811, 815 (3d Cir. 2001)).  The defendant may later move to withdraw the guilty plea after the court

accepts it and before the court imposes sentence.  See id.  To do so, the defendant must "show a fair and just reason for requesting the withdrawal."  FED. R. CRIM. P. 11(d)(2)(B); see also James, 928 F.3d at 253 (citing FED. R. CRIM. P. 11(d)(2)(B)).

The entry of a guilty plea is a solemn act, and a defendant's burden in seeking to annul their plea is "substantial."  See United States v. King, 604 F.3d 125, 139 (3d Cir. 2010); United States v. Agarwal, 24 F.4th 886, 890 (3d Cir. 2022) (citing King, 604 F.3d at 139).  The court evaluates such motions in view of three factors: (1) whether the defendant asserts his innocence, (2) whether the defendant offers strong reasons in support of his requested withdrawal, and (3) whether withdrawal will prejudice the government.  See James, 928 F.3d at 253 (quoting Jones, 336 F.3d at 252); United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989).  No one factor is dispositive.  See United States v. Wilder, 134 F. App'x 527, 528 (3d Cir. 2005) (nonprecedential) (citing Jones, 336 F.3d at 252-55).  The court must balance the factors and determine whether there is a fair and just reason to grant withdrawal. See id.

## IV.    **Discussion**

Serrano-Munoz grounds his request to withdraw his guilty plea in his alleged misunderstanding of the terms of his plea agreement and, specifically, his sentencing exposure.  (See Doc. 170 at 3-4).  The court considers the merits of Serrano-Munoz's motion under the Jones factors.

### A.    **Assertion of Innocence**

A defendant seeking to withdraw their guilty plea may assert they are either factually or legally innocent.  See James, 928 F.3d at 253-55.  Nonetheless, bald

assertions of innocence are insufficient to satisfy this factor. <u>See</u> <u>id.</u> at 255 (quoting

<u>Jones</u>, 336 F.3d at 252). The law requires a defendant to substantiate their factual

or legal innocence with facts in the record. <u>See</u> <u>id.</u> (quoting <u>Brown</u>, 250 F.3d at 818).

The defendant must also give adequate reasons as to why they took a contradictory

position at their change of plea hearing. <u>See</u> <u>id.</u> (citing <u>Jones</u>, 979 F.2d at 318).

Serrano-Munoz makes only the bald statement that "[he] asserts his

innocence to Count 1." (<u>See</u> Doc. 170 at 3). He provides neither a factual nor legal

argument supporting his assertion. <u>See</u> <u>James</u>, 928 F.3d at 255. Serrano-Munoz

admitted at the change of plea hearing to being guilty of sexual exploitation of

children. (<u>See</u> Doc. 167 at 24:6-15). He expressed confusion regarding the possible

penalties and disputed the number of images sent to him by the victim, (see <u>id.</u> at

10:25-12:1, 19:24-21:3), but never made any statements asserting or implying he

believed himself innocent of the crime in question. Serrano-Munoz's factual

admissions of guilt on the record at the change of plea hearing "carry a strong

presumption of verity" when compared to his present, contradictory, and

unsupported assertion of innocence. <u>See</u> <u>James</u>, 928 F.3d at 256 (quoting

<u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)). We find this factor provides no

support to Serrano-Munoz's motion.

### B.    Strength of Reasons for Withdrawing Plea

When a defendant offers sufficiently weighty reasons for withdrawing his

plea, the court may grant the motion notwithstanding a failure to assert factual

innocence. <u>See</u> <u>United States v. Cormier</u>, 758 F. App'x 269, 275 (3d Cir. 2018) (citing

<u>United States v. Stayton</u>, 408 F.2d 559, 561 n.5 (3d Cir. 1969)). Serrano-Munoz does

not dispute that he was advised of his sentencing exposure both in the written plea agreement and during the change of plea hearing; rather, he claims he believed at the time of his change of plea hearing that the "change in language" regarding the number of images sent to Serrano-Munoz by the victim "affected the applicable mandatory minimum in his favor." (See Doc. 170 at 4). A mistaken understanding as to one's sentencing exposure can defeat the knowing and voluntary nature of a guilty plea; however, the defendant must show that their mistake was reasonable under the circumstances. See Cormier, 758 F. App'x at 275 (quoting United States v. Crusco, 536 F.2d 21, 24 (3d Cir. 1976)).

Serrano-Munoz's purported belief is unreasonable for two reasons: first, Serrano-Munoz's view of the law is incorrect and, second, nothing occurred during his change of plea hearing or elsewhere that can reasonably be construed as substantiating his view. Defendants convicted under 18 U.S.C. § 2251(a) for sexual exploitation of children are subject to the penalties enumerated in Section 2251(e). Section 2251(e) sets a baseline mandatory minimum of 15 years' imprisonment and elevates the mandatory minimum when the defendant meets certain criteria. See 18 U.S.C. § 2251(e). If the defendant has one prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or . . . child pornography," the defendant is subject to a 25-year mandatory minimum sentence. See id. If the defendant has two or more qualifying prior convictions, the mandatory minimum sentence is 35 years' imprisonment. See id. There is no relationship whatsoever

between application of this statutory enhancement and the number of images involved in the offense.  See id.

Moreover, there is no indication in the record that Attorney Marchioli, Attorney Kauzlarich, or the court misled Serrano-Munoz as to his sentencing exposure.  The plea agreement explicitly acknowledges that Serrano-Munoz faces either a 15-year or 25-year mandatory minimum depending on the applicability of the Section 2251(e) enhancement, although it does not specify what triggers application of the enhancement.  (See Doc. 136 ¶¶ 1-2).  When Serrano-Munoz expressed confusion at the change of plea hearing regarding the enhanced 25-year mandatory minimum sentence, Judge Schwab instructed Attorney Marchioli to clarify Serrano-Munoz's sentencing exposure, and explicitly directed Serrano-Munoz to listen carefully to the prosecutor's statement of his sentencing exposure. ("And I'm going to have you pay close attention, and then we're going to see if he cleared it up for you.  Okay?") (See Doc. 167 at 11:21-12:6).  With this mindful response to Serrano-Munoz's questions about his sentencing exposure, Judge Schwab ensured Serrano-Munoz was making a knowing, voluntary, and intelligent decision to plead guilty regardless of whether a 15-year or 25-year mandatory minimum applied.  The clarification of sentencing exposure and confirmation of the defendant's understanding came to pass as Judge Schwab directed.  Attorney Marchioli explained in clear terms that Serrano-Munoz's sentencing exposure "could be impacted by a potential enhanced penalty under Section 2251(e) *based on Mr. Serrano-Munoz's prior conviction*; in particular, his prior conviction for involuntary deviate sexual assault."  (See id. at 12:13-20 (emphasis added)).  After

Attorney Marchioli concluded, Serrano-Munoz affirmed he understood his sentencing exposure.  (See id. at 13:1-3).  When Judge Schwab asked Serrano-Munoz if he had any questions about the enhanced penalty, Serrano-Munoz replied, "No."  (See id. at 13:4-5).  Attorney Kauzlarich also affirmed Serrano-Munoz understood the "the issue of enhanced penalty" and asserted that he and Serrano-Munoz had discussed the issue "extensively."  (See id. at 13:6-13).

Later in the hearing, Serrano-Munoz disputed the number of images involved in his underlying offense, and Attorney Marchioli agreed to modify his statement of offense conduct as a result.  (See id. at 19:13-25:5).  Yet no statement made by Attorney Marchioli, Attorney Kauzlarich, or the court regarding the facts underlying Serrano-Munoz's offense implied any connection between the number of images and the statutory sentencing enhancement.  (See id.)  Nor did Serrano-Munoz suggest that his concern about the number of images was somehow related to the statutory sentencing enhancement discussed earlier in the hearing. Additionally, Serrano-Munoz has not pointed to any evidence outside of the hearing transcript to support the reasonableness of his alleged misunderstanding.

The record establishes that Serrano-Munoz participated in a thorough and searching open-court colloquy.  The government clearly communicated Serrano-Munoz's potential sentencing range twice over, and Judge Schwab acted affirmatively to dispel any confusion regarding application of the statutory sentencing enhancement.  (See Doc. 167 at 8:8-9:6, 12:2-13:13).  Moreover, the government identified the circumstance that could trigger the Section 2251(e) enhancement—Serrano-Munoz's past conviction for involuntary deviate sexual

intercourse.  (See id. at 12:16-20).  Any confusion Serrano-Munoz might have had regarding the relationship between the number of images and the statutory enhancement is not reasonable under the circumstances because it has no support in his plea agreement or the hearing transcript.  See Crusco, 536 F.2d at 24.  Hence, Serrano-Munoz fails to articulate a compelling reason for allowing him to withdraw his guilty plea.  As Serrano-Munoz also fails to meaningfully assert his innocence, he has not shown a fair and just reason to withdraw his plea. [1]  See FED. R. CRIM. P. 11(d)(2)(B).

**V.    Conclusion**

We will deny Serrano-Munoz's motion to withdraw his guilty plea.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    May 23, 2022

---

[1] Because Serrano-Munoz inadequately asserts his innocence and offers insufficient reasons for withdrawing his plea, we need not reach the issue of potential prejudice to the government.  See Jones, 336 F.3d at 255 (citing United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995)); see also Cormier, 758 F. App'x at 276.